IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NIKKI A. GARDNER,
       Plaintiff,
v.                                               Civil Action No. 3:18-cv-98-JAG

DAVID J. SHULKIN, in his official
capacity as Secretary of the Department of
Veterans Affairs,
       Defendant.

## OPINION

In July, 2014, the Strategic Acquisition Center ("SAC") of the Department of Veterans Affairs ("VA") fired Nikki A. Gardner, a contract specialist. Gardner, an African American woman with dark skin, has sued David J. Shulkin, the Secretary of the VA, alleging that the VA discriminated against her in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. She also seeks to reverse and vacate the decision of the VA's Merits Systems Protection Board ("MSPB"). Shulkin has moved to dismiss Gardner's color claim in Count One of the amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[1] Because the Court has subject matter jurisdiction over that claim, the Court will deny the motion to dismiss.

## I. BACKGROUND

Gardner began working as a contract specialist with the federal government on March 3, 2011. In March, 2012, Gardner transferred to the SAC. Shortly thereafter, James Poe transferred to the SAC and became Gardner's direct supervisor. Gardner says that she never

---

[1] Shulkin initially moved to dismiss the following claims: the national origin and color claims within Count One, Count Five, and Count Seven. Gardner has stipulated to the dismissal of the national origin claim in Count One, Count Five, and Count Seven. Accordingly, the Court will only address Gardner's color claim in Count One.

experienced discrimination prior to Poe's arrival, but constantly suffered it afterwards. Poe yelled at Gardner in front of other co-workers, slammed the door in her face, refused to communicate with her, and acted generally abusively towards her.[2] Poe allegedly treated Gardner's white, male co-workers with much more respect.

After working in this environment for almost two years, Gardner filed an initial charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 4, 2014. Her final amended charge, filed on November 11, 2014, alleged retaliation and discrimination based on sex, race, and disability. During the administrative investigation, Gardner reported that she "was the only dark-skinned black African-American" in her office, and that the VA "treated darker skinned woman [sic] of African American decent [sic] differently than fair skinned African American woman [sic]." (Dk. No. 37-1, at 7.) In June, 2014, the VA notified Gardner that it would fire her effective July 13, 2014. After exhausting her administrative remedies through the MSPB, Gardner received a right to sue letter on October 7, 2016.

Gardner filed suit on November 7, 2016. Her amended complaint asserts seven counts: (1) race, color, and national origin discrimination in violation of Title VII; (2) reprisal for engaging in protected activities; (3) violation of the Rehabilitation Act; (4) hostile and abusive work environment; (5) retaliation; (6) reversal and vacation of the MSPB decision; and (7) fraud upon the Court. The color discrimination claim within Count One remains the only disputed count in the pending motion to dismiss.

---

[2] In one particularly juvenile example, Poe refused to communicate with Gardner by outstretching his palm and saying, "talk to my hand." (Dk. No. 5, at 13.)

2

## II. DISCUSSION[3]

Title VII prohibits employers from firing an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C § 2000e-2(a)(1). A plaintiff must exhaust all administrative remedies to file suit in federal court under Title VII. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Importantly, a plaintiff's failure to exhaust administrative remedies deprives a federal court of subject matter jurisdiction. *Id.*

The content of the administrative charge determines the scope of a plaintiff's right to file a federal lawsuit. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Accordingly, a plaintiff may only bring suit in federal court for complaints "stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996); *see also Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 571 (E.D. Va. 2009) ("For example, the plaintiff's claim generally will be barred if [her] charge alleges discrimination on one basis—such as race—and [she] introduces another basis in formal litigation—such as sex."). The Court, therefore, must determine whether the charges Gardner alleges in her amended complaint "reasonably relate[]" to her EEOC charge and the subsequent administrative investigation. *See Smith*, 202 F.3d at 247.

Gardner alleges discrimination based on color. Gardner, however, only included charges of retaliation and discrimination on the basis of sex, race, and disability in her EEOC charge. Courts have recognized that "there is potential overlap between discrimination based upon race,

---

[3] Shulkin has moved to dismiss Gardner's color claim in Count One under Rule 12(b)(1), asserting that Gardner failed to exhaust her administrative remedies. *See* Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

3

nationality, and color." *Gordon v. Richmond Pub. Sch.*, No. 3:13cv113, 2013 U.S. Dist. LEXIS 106701, at *15 (E.D. Va. July 30, 2013). Courts look to the EEOC charge, the administrative investigation, and the federal complaint to determine the extent of this "potential overlap." *See id.*; *Nieves v. CCC Transp., LLC*, No. 3:12cv500, 2012 U.S. Dist. LEXIS 127060, at *11 (E.D. Va. Sept. 6, 2012).

During the administrative investigation, Gardner repeatedly asserted that she "was the only dark-skinned black African-American" in her office, and her employer "treated darker skinned woman [sic] of African American decent [sic] differently than fair skinned African American woman [sic]." (Dk. No. 37-1, at 7.) These assertions sufficiently put the VA on notice of Gardner's subsequent color claim. *See Nieves v. CCC Transp., LLC*, No. 3:12cv500, 2012 U.S. Dist. LEXIS 127060, at *11 (E.D. Va. Sept. 6, 2012) (holding the plaintiff's allegation that "he was harassed through . . . questions about [his] skin tone . . . and cursed by a White co-worker," and his valid national origin charge sufficiently put the defendant on notice of the plaintiff's subsequent race claim).

Shulkin relies on the Fourth Circuit's decision in *Bryant v. Bell Atlantic Maryland., Inc.*, 288 F.3d 124 (4th Cir. 2002), for the proposition that race and color are categorically distinct claims. In *Bryant*, however, the plaintiff tried to assert claims for retaliation, color, and sex discrimination in his federal complaint when his administrative charge only included race discrimination. *Id.* at 133. The court concluded that the administrative investigation did not reveal any facts to support the plaintiff's subsequent claims. *Id.* In this case, "reasonable investigation of the original complaint" did reveal allegations of color discrimination, which are "reasonably related" to Gardner's original race discrimination charge. *See Evans*, 80 F.3d at 963. Accordingly, the Court will deny Shulkin's motion to dismiss.

## III. CONCLUSION

For the reasons stated in this Opinion, the Court will deny Shulkin's motion to dismiss.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 March 2019
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge